1  **WO**

2

3

4

5

6           THE UNITED STATES DISTRICT COURT

7           FOR THE DISTRICT OF ARIZONA

8

9  Cynthia H. Bianco,                    )   Case No. CIV 06-1103-PHX-SMM
                                          )
10         Plaintiff,                     )   **ORDER**
                                          )
11  vs.                                   )
                                          )
12                                        )
    Michael J. Astrue,                    )
13  Commissioner, Social Security         )
    Administration,                       )
14                                        )
           Defendant.                     )
15  _____      )

16        Before this Court are a Motion for Summary Judgment filed by Plaintiff Cynthia H.

17  Bianco (Dkt. 21) and a Cross Motion for Summary Judgment filed by Defendant Michael

18  J. Astrue[1], Commissioner of the Social Security Administration (SSA) (Dkt. 23).  In

19  evaluating these motions, the Court must determine (1) if substantial evidence exists to

20  support the decision of the Administrative Law Judge and (2) whether correct legal

21  standards were applied by the Administrative Law Judge.

22  //

23  //

24  //

25  //

26  _____

27        [1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007.
    Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should,
28  therefore, be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit.

1

**BACKGROUND**

2 **I. Factual History**

3        Cynthia Bianco (Plaintiff) was born on March 21, 1964. She completed 10th

4 grade, obtained her GED, became certified as a nursing assistant, and worked as a nursing

5 assistant for a couple of weeks in August 2002 (Tr. at 420-421). Plaintiff alleges that she

6 became disabled on August 29, 2002 due to anxiety, depression, and diabetes.  Plaintiff

7 filed for disability in March 2003.

8    **A. Physical Health**

9        In August 2002, Plaintiff received treatment in an emergency room for acute heart

10 palpitations. She was advised at the time to discontinue drinking caffeinated beverages

11 and to follow up with her doctor. (Tr. at 108-116). Plaintiff followed up with Dr. Jack M.

12 Wolfson, D.O., who performed tests on Plaintiff and determined Plaintiff was "capable of

13 sedentary work." (Tr. at 126). His findings included "1+ edema," a Cardiolite stress test

14 that revealed a mild anterior wall defect, and a normal Holter monitor (Tr. at 127).

15 Plaintiff was advised to exercise 20-30 minutes per day. *Id*. Dr. Wolfson also noted that

16 Plaintiff's had "1+ lower extremity edema." (Tr. at 130).

17        From the end of 2002 through 2005, Plaintiff told Dr. Daulat at various times that

18 she was fatigued, depressed and had anxiety. Plaintiff also complained of her feet

19 swelling due to her edema condition and that she was unable to work. Dr. Daulat treated

20 Plaintiff's swelling in March 2003 with a recommendation that she elevate her feet, (Tr.

21 at 230), and treated Plaintiff in April 2003 with medication (Tr. at 227).[2] However, many

22 of Dr. Daulat's assessments regarding Plaintiff's edema state that Plaintiff has "no

23 palpable edema." (Tr. at 212, 222, 230). Dr. Daulat took a chest X-ray in January, 2004,

24 showing the possibility of a "a very subtle or early [congestive heart failure] or

25

---

26        [2]Dr. Daulat's note that Plaintiff elevate her feet is somewhat cryptic (the word
27 "elevate" is represented by an upward arrow); however, the Court finds Plaintiff's
interpretation of the note is reasonable and, since Defendant does not refute this particular
28 claim, finds that Dr. Daulat instructed Plaintiff to elevate her feet due to her edema condition.

1   pulmonary edema." (Tr. at 331). In addition, at some time before March 21, 2004, Dr.

2   Daulat wrote "volunteer work" in the assessment/plan section of his progress exam.[3] In

3   January 2004, Dr. Daulat referred Plaintiff to Dr. Chris Geohas, M.D., who noted that

4   Plaintiff had "2+ edema," "is not able to walk for more than a few minutes without

5   getting severe shortness of breath," and was in "no apparent distress." (Tr. at 390). In

6   March 2004, Dr. Geohas had conflicting notes stating Plaintiff had no edema and "+1

7   lower extremity edema;" he also stated that Plaintiff was in "no apparent distress." (Tr. at

8   388).

9        On June 1, 2004, a sleep study was conducted due to Plaintiff demonstrating

10  symptoms of sleep apnea. (Tr. at 381-386). As a result of the study, Plaintiff was

11  prescribed and began to use a CPAP to relieve her symptoms. (Tr. at 424). During a

12  hearing that included the ALJ, Plaintiff, and Plaintiff's counsel in May 2005, Plaintiff

13  stated that the CPAP has not worked. *Id.*

14  **B. Mental Health**

15       Beginning September 27, 2002, Plaintiff began counseling for anxiety and fatigue

16  at Terros, Inc. Behavioral Health Services. (Tr. at 191-205). Plaintiff reported in October

17  2002 that she was unable to maintain her employment due to anxiety. (Tr. at 191). In

18  addition, Plaintiff testified that she feels stressed around people. (Tr. at 428). During

19  Terros's evaluation of Plaintiff from September 2002 through May 2005, Plaintiff's mood

20  fluctuated; she would be depressed at times and at other times communicate that she felt

21  much better. To relieve her symptoms, Plaintiff was prescribed with medications at

22

23  _____

24       [3]Plaintiff additionally claims that Dr. Daulat described her as "unable to work" on
    January 13, 2003, (Tr. at 235), and "unemployable" on April 6, 2004 (Tr. at 325). However,
25  a review of the record shows that Dr. Daulat wrote "unable to work" in a section of his notes
    that was generally reserved Plaintiff's self-assessment, not Dr. Daulat's findings.
26  Furthermore, the word Plaintiff may be referring to as "unemployable" is borderline illegible
    and could easily represent another word. (Tr. at 325). The Court does not find that Dr.
27  Daulat's description of Plaintiff as unable to work or unemployable are undisputed facts in
28  this case.

varying dosages depending on her condition; however, she was consistently reported by her Terros counselor as being alert and oriented, with an "unremarkable" exam status. In June, 2003, Plaintiff received a complete psychiatric evaluation from Dr. Jack L. Potts, M.D., who noted that Plaintiff had "improved markedly on the Wellbutrin and that marked improvement has only occurred over the last couple of weeks." (Tr. at 141). Dr. Potts additionally noted that Plaintiff "still does have some symptoms of a depressive disorder and is not in full remission at the current time. Hopefully, she will be able to continue on the road to recovery and become gainfully employed in the near future." *Id*.

In January, 2005, Plaintiff's Terros counselor stated that Plaintiff should "take 15 minutes to do something productive at home and then 15 minutes to do something fun for herself." (Tr. at 346). The counselor stated that after she did this, she could sleep all day if she wanted. *Id.* Between November, 2004 and April, 2005, Plaintiff's Terros counselor noted that Plaintiff was depressed with the exception of the holiday period. The counselor made various remarks stating that Plaintiff needs to make an effort to help herself get better, to "stop her negative self talk" and "turn 'I can't into I can.'" (Tr. at 354, 341, 346, 354, 357).

**C. Facts Pertaining to Both Plaintiff's Physical and Mental Health**

In April 2003, Plaintiff reported that she gets her kids ready for school, tries to clean her house, does the dishes, washes clothes, goes grocery shopping (although she does not like doing so), and drives a car. (Tr. at 82-84). Plaintiff also claimed that she sleeps a lot, needs to be reminded to take a shower, has trouble keeping organized, and occasionally gets overwhelmed when attempting the keep the house in order. *Id*. At the hearing in May 2005, Plaintiff claimed that, aside from getting the kids ready for school and when the kids came home, she constantly sleeps and does not always bathe or get dressed. (Tr. at 429, 435). At the same hearing, Plaintiff claimed that she did not do household chores, that "the girls" did the dishes and laundry, that they were "pretty much self-sufficient," and that this had been going on for the past two-and-a-half years. (Tr. at 429-430, 435).

1    In addition, on January 11, 2003, approximately five months after Plaintiff claims
2    she was disabled and two months before she filed for disability benefits, Plaintiff
3    mentioned during a counseling session that she was frustrated due to difficulties in
4    receiving her unemployment checks.

5    **D. ALJ's Conclusion**

6    The ALJ determined that Plaintiff's medical impairments were severe only if taken
7    in combination, and did not "meet or medically equal, either singly or in combination, one
8    of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." (Tr. at 18). The
9    ALJ also found that, while Plaintiff did perform work after her alleged onset date, the
10   work she performed was "under substantial gainful activity level." *Id*. The ALJ concluded
11   that Plaintiff could not perform her past work as a certified nursing assistant because it
12   required "medium" exertion and the position was a semi-skilled one (Tr. at 21, 23);
13   however, the ALJ found that Plaintiff was capable of "lifting up to 20 pounds
14   occasionally and 10 pounds frequently, could perform unskilled work, had some postural
15   limitations; should not use her legs for pushing or pulling and should not have significant
16   public interaction" (Tr. at 440). A vocational expert testified that a person who was
17   capable of such activities could perform light packaging, assembly and janitorial jobs. *Id*.

18   **II.  Procedural History**

19   In March 2003 (protective filing date), Plaintiff filed applications for Disability
20   Insurance Benefits (DIB) and Supplemental Social Security Income (SSI). (Tr. at 57-59,
21   399-401). After the claims were denied, Plaintiff requested a hearing before an
22   Administrative Law Judge (ALJ). (Tr. at 13-24). On July 18, 2005, the ALJ issued a
23   decision denying Plaintiff's DIB and SSI claims. (Tr. at 24). The ALJ's decision became
24   final on February 16, 2006, when the Appeals Council denied Plaintiff's request for
25   review. (Tr. at 6-10). Plaintiff then brought this action for judicial review pursuant to 42
26   U.S.C. § 405(g).

27   Plaintiff filed a motion for summary judgment on April 16, 2007, pursuant to Rule
28   56 of the Federal Rules of Civil Procedure (FRCP). (Dkt.  21). Defendant filed a response

1    to Plaintiff's Motion for Summary Judgment and a Cross-Motion for Summary Judgment

2    on May 11, 2007. (Dkt. 15). Plaintiff then filed a Response to Defendant's Cross-Motion

3    for Summary Judgment and a Reply in Support of Plaintiff's Motion for Summary

4    Judgment on June 5, 2007. (Dkt. 28). These motions have been briefed and are now set

5    for disposition by this Court.

6                                    **STANDARD OF REVIEW**

7            In the District of Arizona, Social Security appeals are resolved by the process of

8    summary judgment.  Summary judgment is appropriate if there are no genuine issues as to

9    any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.

10   Civ. P. 56(c).  The ALJ's decision must be affirmed by this court if it is supported by

11   substantial evidence and based on proper legal standards. *Ukolov v. Barnhart*, 420 F.3d

12   1002, 1004 (9th Cir. 2005).  "Substantial Evidence is more than a mere scintilla, but less

13   than a preponderance; it is such relevant evidence as a reasonable mind might accept as

14   adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.

15   1997).  If the evidence can reasonably support either affirming or reversing the decision

16   of the Commissioner, the Court may not substitute its judgment for that of the

17   Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir.

18   2004); *McCartey v. Massanari*, 298 F.3d 1072, 1075 (9th Cir. 2002).  The ALJ is

19   responsible for determining credibility, resolving conflicts in medical testimony, and for

20   resolving ambiguities. *See Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003);

21   *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th cir. 2001).  The ALJ's determinations of

22   law are reviewed *de novo*, although deference is given to a reasonable construction of the

23   applicable statutes. *See Edlund*, 253 F.3d at 1156; *McNatt v. Apfel*, 201 F.3d 1084, 1087

24   (9th Cir. 2000).  At all times, the claimant carries the burden of proving disability and

25   failure to prove disability justifies a denial of benefits. *See Ukolov*, 420 F.3d at 1004.

26   //

27   //

28   //

**DISCUSSION**

**I. Plaintiff's physical limitations**

Plaintiff asserts that her excessive tiredness, fatigue and lack of mobility, along with her mental health issues, do not allow her to perform substantial gainful work. Plaintiff mainly attributes her physical limitations to sleep apnea and edema. Plaintiff also has diabetes, but the ALJ claims it is under control with "oral hypoglycemic agents." This is not refuted by Plaintiff. The ALJ further contends that none of Plaintiff's physical ailments result in her being incapable of performing substantial gainful work. The Court agrees.

Plaintiff provides subjective and objective medical evidence of her edema; however, the Court does not find any evidence that Plaintiff's edema would limit Plaintiff from performing any substantial gainful work, despite Dr. Daulat's one reference in March 2003 that she may need to elevate her feet (Tr. at 230). Dr. Daulat did not explain how often Plaintiff would need to elevate her feet or how limited Plaintiff was in standing or walking. Other doctors, such as Dr. Daulat and Dr. Geohas, mentioned Plaintiff's edema, but none stated that the condition would limit her from performing gainful work. Nonetheless, the ALJ determined that Plaintiff "cannot use her lower extremities for pushing and pulling." The Court finds that it is the Plaintiff's duty to prove she has a disability, and the evidence does not show that her edema prevents her from performing gainful work.

The Court makes a similar finding in regards to Plaintiff' sleep apnea. In January 2004, Dr. Geohas evaluated Plaintiff and noted that she "is not able to walk for more than a few minutes without getting severe shortness of breath;" however, he also stated that Plaintiff was "in no apparent distress." He again evaluated Plaintiff in March 2004, and although he did not address Plaintiff's shortness of breath as severe, he recommended Plaintiff take a sleep study. After Plaintiff was diagnosed with sleep apnea, she was prescribed a CPAP mask to relieve her condition in May 2005. Plaintiff claimed in her testimony that the CPAP mask was not working, (Tr. at 424), and that she would sleep for

1  a substantial portion of the day (Tr. at 429). There is, however, no evidence that
2  Plaintiff's sleep apnea caused her to sleep to the extent that she claimed or that the CPAP
3  mask prescribed to her was ineffective. The ALJ noted that Plaintiff was treated with a
4  CPAP mask and states that "the evidence fails to establish that her sleep apnea caused
5  limitations in her ability to function sufficient enough to limit her to sedentary work." (Tr.
6  at 20). The Plaintiff has the duty to prove the existence of a disability, and the Court finds
7  she did not do so in regards to her sleep apnea. Accordingly, the ALJ was correct in
8  determining that Plaintiff's sleep apnea does not prevent her performing substantial
9  gainful work.
10       Plaintiff notes that when Dr. Wolfson assessed her condition towards the end of
11  2002, he concluded that Plaintiff was "capable of sedentary work," implying that she was
12  not capable of performing work that was not sedentary (Dkt.28 at f. 1, Tr. at 126). The
13  ALJ gave Dr. Wolfson's opinion "little weight" stating that neither his findings at the
14  time (i.e. a negative stress Cariolite study and Holter monitor) nor future treatment
15  records (i.e. a negative adenosine stress test report and a echocardiogram that, despite
16  showing a borderline left ventricular hypertrophy, would not, according to the ALJ, limit
17  Plaintiff to sedentary work) support his conclusion. (Tr. at 19). Plaintiff counters that the
18  ALJ has no contrary medical opinion that would justify the dismissal of Dr. Wolfson's
19  opinion (Dkt. 28 at f. 1); however, if the ALJ finds that Dr. Wolfson's opinion is not
20  supported by clinical and laboratory findings and provides specific and legitimate
21  reasons, as the he did here, the ALJ may reject the doctor's medical opinion. *See Rollins*
22  *v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). The Court finds that the ALJ correctly
23  concluded that Dr. Wolfson's opinion ought to be given little weight.  Therefore, the
24  Court finds that substantial evidence supports the ALJ's determination in regards to
25  Plaintiff's physical impairments.
26  **II. Plaintiff's mental health limitations**
27       The Court finds that the evidence can reasonably support either affirming or
28  reversing the decision of the ALJ regarding Plaintiff's anxiety and depression, and must,

1   therefore, affirm his decision. *Batson*, 359 F.3d at 1193. The ALJ based his decision

2   regarding Plaintiff's mental disability, in part, on Dr. Potts's assessment. Dr. Potts stated

3   that Plaintiff "improved markedly" in June and July 2003, which was after she began

4   taking the medication Wellbutrin and receiving counseling at Terros, Inc. (Tr. at 20, 141).

5   However, Plaintiff correctly claims that the ALJ failed to consider the rest of Dr. Potts's

6   notes, which state: (1) that he hoped Plaintiff would "be able to continue on the road to

7   recovery and become gainfully employed in the near future," thereby implying that

8   Plaintiff could not perform gainful work at that point (Dkt. 21 Motion for Summary

9   Judgment at 6, Tr. at 141); (2) that Plaintiff's depression was only in partial remission;

10  and (3) that Plaintiff "did not seem to be exaggerating [her] complaints at all." (Dkt. 28 at

11  p. 4, Tr. at 141). Plaintiff also told Dr. Potts that "up until relatively recently, she was

12  markedly irritable and often suicidal." (Tr. at 140). Plaintiff further states that therapy

13  reports show that she appeared to be depressed on several occasions between September

14  6, 2003 through January 11, 2005, she had no significant improvement despite medication

15  changes, and she stated to her counselor that she slept excessively and had "no will to do

16  anything." (Dkt. 21 Motion for Summary Judgment at 6; Dkt. 28 at 5; Tr. at 160, 378,

17  368, 367, 362, 354, 339, 357, 354, 346). Additionally, Plaintiff cites her therapist

18  recommending in January, 2005, that she take "15 minutes to do something productive at

19  home and then 15 minutes to do something fun for herself" and after that Plaintiff "could

20  sleep all day if she wanted," as evidence that Plaintiff remained seriously depressed.

21         The Court finds that the ALJ, in only noting Plainitiff's marked improvement in

22  June, 2003, committed an error by considering only isolated portions of the medical

23  record on this issue. *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001), citing

24  *Kellough v. Heckler*, 785 F.2d 1147, 1153 (4th Cir. 1986) (a doctor's statement must be

25  "read in the context of the overall diagnostic picture he draws. That a person who suffers

26  from severe panic attacks, anxiety, and depression makes some improvement does not

27  mean that the person's impairments no longer seriously affect her ability to function in a

28  workplace"). However, the Defendant later claims that Dr. Potts's evaluation states that

1   Plaintiff's "mental functioning remained stable and unimpaired," (Dkt. 25 at 5), and

2   "there was no evidence that she experienced any cognitive deficits." (Dkt. 25 at 8).

3   Although the Court finds that an individual's ability to display cognitive and mental

4   functioning is not sufficient to determine that one is capable of performing gainful work,

5   it can be considered as a factor. Defendant also states that Plaintiff always reported being

6   alert and oriented (Dkt. 25 at 10; Tr. 176, 199-200, 206-209, 339, 341, 351, 355, 360,

7   368, 374-375, 379, 380). Additionally, Defendant contends that therapy records show that

8   Plaintiff appeared unmotivated and capable of doing more (Tr. 341, 346, 354, 357).

9   Plaintiff counters that she was perhaps unmotivated, but not unwilling, and that her lack

10  of motivation stemmed from her depression. The Court further finds that the ALJ

11  properly addressed Plaintiff's testimony that she feels stressed around people, (Tr. at

12  428), by determining that she could not work in situations that require her to interact with

13  the public.

14         Based on Dr. Potts's and the Terros therapist's assessment of Plaintiff's mental

15  health, the Court finds that the evidence could reasonably support the ALJ's or Plaintiff's

16  determination on this matter. The Court, in this instance, should not substitute its own

17  judgment for that of the ALJ's and, accordingly, finds that the ALJ correctly determined

18  that Plaintiff is capable of substantial gainful work despite her mental limitations.

19  Furthermore, the Court finds that the ALJ committed harmless error by only citing a

20  limited portion of the record because there is substantial evidence that supports the ALJ's

21  determination. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990); *Booz v. Secretary*

22  *of Health and Human Services*, 734 F.2d 1378, 1380 (9th Cir. 1984).

23  **III. Plaintiff's credibility**

24         There is substantial evidence to support the ALJ's findings that Plaintiff's

25  allegations regarding her limitations are not totally credible. When assessing the

26  credibility of a plaintiff, if the ALJ finds the testimony pertaining to the severity of

27  impairments to be unreliable, the ALJ must make a credibility determination with

28  findings sufficiently specific to permit the court to conclude that the ALJ did not

1   arbitrarily discredit claimant's testimony. Social 42 U.S.C.A. § 423(d)(1)(A). *Bunnell v.*

2   *Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991). The ALJ may consider inconsistencies

3   either in claimant's testimony or between her testimony and her conduct, her daily

4   activities, her work record, testimony from physicians and third parties concerning the

5   nature, severity, and effect of the symptoms of which claimant complains. *Thomas v.*

6   *Barnhard*, 278 F.3d 947, 959 (9th Cir. 2002); 42 U.S.C.A. § 423(d)(1)(A).

7         The ALJ attacked the Plaintiff's credibility, stating that:  (1) Plaintiff reported to a

8   counselor in January, 2003 that she was receiving unemployment insurance benefits,

9   which requires an individual to certify the ability to work and the availability for work;

10  (2) Plaintiff's daily activities, such as getting her children ready for school, driving and

11  grocery shopping, are not the activities of an individual too disabled to perform some type

12  of substantial gainful activity; and (3) neither the severity nor the extent of Plaintiff's

13  limitations is supported by the objective medical evidence of record. (Tr. at 20).

14        To receive unemployment benefits, one must assert that he or she is able to work

15  and available for work. Although Plaintiff filed for unemployment benefits prior to filing

16  for disability benefits, Plaintiff filed her unemployment benefits application five months

17  after her alleged disability began. Plaintiff states that the ALJ should have questioned

18  Plaintiff directly as to her intention in applying for unemployment benefits before judging

19  her credibility. The Court finds that additional Plaintiff's testimony was not necessary and

20  finds it reasonable for the ALJ to question Plaintiff's credibility on these grounds.

21        The Court further finds that the ALJ correctly questioned Plaintiff's credibility by

22  determining that Plaintiff's daily activities do not completely coincide with her alleged

23  limitations in performing substantial gainful work. Plaintiff provided conflicting reports

24  as to the extent of her daily activities, stating that she has to get the kids ready for school,

25  she cooks dinner, tries to clean up the house, and at another time stating that her kids are

26  self-sufficient and she does not clean the house. (Tr. at 82-84, 429, 435). The ALJ is

27  responsible in determining credibility and resolving ambiguities, and in this instance, the

28

1    Court finds that the ALJ correctly relied on only one version of Plaintiff's testimony in

2    determining her daily activities and Plaintiff's credibility.

3            Additionally, the Court finds that substantial evidence supports the ALJ's

4    contention that the objective medical evidence does not support Plaintiff's limitations.

5    There is no evidence that Plaintiff's edema or sleep apnea will keep her from performing

6    substantial gainful work. Additionally, there was no finding of heart problems associated

7    with Plaintiff's heart palpitations, as she was only told to reduce her consumption of

8    caffeinated beverages. (Tr. 18-19). Furthermore, Plaintiff's had negative test results when

9    evaluated by Dr. Wolfson, despite his finding that Plaintiff was only capable of sedentary

10   work. (Tr. 19). Accordingly, the Court finds that the ALJ's decision is supported by

11   substantial evidence.

12   **IV.  The ALJ's application of the legal standards**

13           The Court finds that the ALJ applied correct legal standards in evaluating

14   Plaintiff's disability claim. The ALJ properly performed the essential five-step sequential

15   evaluation process pursuant to 20 C.F.R. §§ 404.1520 and 416.920 (2003). At step one,

16   the ALJ determined that Plaintiff had not engaged in substantial activity since the date of

17   her alleged disability onset. (Tr. at 18).  At step two, he determined that Plaintiff's

18   diabetes, obesity, sleep apnea, a depressive disorder, and an anxiety disorder constitute a

19   severe impairment, as defined by 20 §§ C.F.R. 404.1521 and 416.921, when taken in

20   combination. *Id*. The ALJ noted that Plaintiff's diabetes, obesity, sleep apnea, a

21   depressive disorder, and an anxiety disorder are considered severe when taken in

22   combination. *Id*. Pursuant to step three, the ALJ compared Plaintiff's impairments with

23   the list of impairments described in Appendix 1 of the Regulations (20 C.F.R., Part 404,

24   Subpart P, Appendix 1). *Id*. The ALJ found that Plaintiff's impairments, whether

25   considered singly or in combination, do not meet or equal the severity of any listing level

26   impairment. (20 C.F.R. 404.1527(f), 416.927(f), and Social Security Ruling 96-6p).  *Id*.

27           Step four requires that ALJ determine Plaintiff's residual functional capacity

28   (RFC) to assess whether Plaintiff has the capability of performing her past relevant work.

1   RFC is defined as what the claimant can still do despite her limitations due to her

2   impairments. (20 C.F.R. §§ 404.1545 and 416.945). The ALJ determined that Plaintiff

3   could perform "light unskilled simple work," which, according to the ALJ, could include

4   sitting for six-hours in an eight-hour workday, standing and/or walking for six hours in an

5   eight-hour workday, and lifting and/or carrying ten pounds frequently and twenty pounds

6   occasionally. (Tr. at 20). The ALJ acknowledged that Plaintiff was unable to crawl,

7   crouch, climb, squat, or kneel and that she cannot use her lower extremities for pushing or

8   pulling. *Id*. The ALJ further stated that the Plaintiff should not be required to interact with

9   the public. *Id*. The Court finds that the ALJ's determination regarding Plaintiff's RFC is

10  consistent with the objective medical evidence presented in the record. The ALJ

11  determined that Plaintiff could not perform her past relevant work, which includes work

12  that is considered substantial gainful activity. (Tr. at 21). In making his determination, the

13  ALJ relied on a vocational expert, who testified that Plaintiff's past relevant work as a

14  certified nursing assistant required "medium" exertion and was semi-skilled, which

15  exceeded Plaintiff's RFC for light, unskilled work. *Id*.

16          After determining Plaintiff could not perform her past relevant work due to her

17  impairments, the ALJ proceeded to step five. At this step, the burden shifts to the Social

18  Security Administration to show that, given her RFC, age, education and work

19  experience, there are other jobs existing in significant numbers in the national that the

20  Plaintiff could perform. *Id.* In the present case, the vocational expert testified that, given

21  Plaintiff's limitations as communicated to him by the ALJ, Plaintiff is capable of working

22  as a packer, of which there are 1,000 jobs existing in Maricopa County, Arizona and

23  180,000 jobs existing in the national economy; assembler, of which there are 3,800 jobs

24  in Maricopa County and 400,000 jobs in the national economy; and janitor, of which

25  there are 3,400 jobs in Maricopa County and 200,000 jobs in the national economy. (Tr.

26  at 22). The Plaintiff contends that the ALJ erred by not addressing Plaintiff's subjective

27  complaints in his assessment of Plaintiff's RFC, and therefore was at fault in his reliance

28  on the vocational expert's determination, which was based on Plaintiff's RFC. (Dkt. 21

1  Motion for Summary Judgment at 12). The Court finds that the ALJ showed that
2  Plaintiff's subjective complaints are not fully credible, and in determining Plaintiff's
3  RFC, correctly included those findings he made based on substantial evidence of the
4  record. Therefore, the Court finds that the Plaintiff has the capacity to perform the jobs
5  stated by the vocational expert. Accordingly, the Court finds that the ALJ correctly
6  performed the five-step evaluation.

7  **CONCLUSION**

8        For the foregoing reasons, this Court determines that the decision of the ALJ is
9  supported by substantial evidence. *See Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir.
10 2003); *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996).  Therefore, summary judgment
11 in favor of Defendant is appropriate as a matter of law.  Accordingly,

12        **IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment
13 (Dkt. 21) is **DENIED**.

14        **IT IS FURTHER ORDERED** that Defendant's Cross-Motion for Summary
15 Judgment (Dkt. 23) is **GRANTED**.

16        **IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment
17 accordingly.

18        DATED this 26th day of July, 2007.

19

20                              _____
                                       Stephen M. McNamee
21                                    United States District Judge

22

23

24

25

26

27

28